**A.L.S. PROPERTIES, SILVER GLEN,
Plaintiff and Appellee,**

v.

**Daniel P. GRAEN and Beverly J.
Graen, Defendants and
Appellants.**

**No. 16952.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 21, 1990.

Decided Jan. 30, 1991.

Ivar M. Kaardal of Dornberger Law Office, Sioux Falls, for plaintiff and appellee.

Michael B. Crew of Crew & Crew, Sioux Falls, for defendants and appellants.

PER CURIAM.

Daniel and Beverly Graen (the Graens) appeal from a judgment in favor of A.L.S. Properties (ALS) regarding a contract for title, a lot lease and a storage bin lease. ALS filed a notice of review with the circuit court on the issue of monetary damages. We affirm the trial court on the issues raised by the Graens. For the reasons discussed below we do not reach the issues raised in ALS's notice of review.

FACTS

ALS sold a mobile home to Craig and Cheri Smith (the Smiths) under a Retail Installment Sales Agreement through which ALS retained a security interest in the mobile home. ALS assigned that security interest to Home Federal Savings and Loan (Home Federal). Home Federal required that ALS take a full recourse position (i.e. guarantee payment) on the Smith Retail Installment Sales Agreement. The Smiths were unable to keep up with their payments and surrendered the mobile home in April of 1986. ALS began to try to resell the mobile home. Home Federal did not receive title back from the Smiths until December of 1986.

The Graens wanted to buy the mobile home and unsuccessfully attempted to obtain financing to purchase the mobile home. Despite the Graens' credit difficulties, ALS entered into a contract for title with the Graens for the Smith mobile home. The April 16, 1986, contract for title provided in part:

> *After 24 months,* the account of Mr. and Mrs. Graen will be reviewed and if prompt payment has been made, and park tenancy has been satisfactory, *then Silver Glen will cause an Assumption of Mortgage to be completed and the Title transferred to the Graens.* The balance of the contract will be approximately 145 remaining payments as of May 1, 1988. (emphasis added).

ALS and the Graens also entered into a lease for a mobile home lot and a separate storage bin lease.

The Graens took possession of the mobile home. The Graens soon became delinquent in their payment obligations under the contract for title. By the end of September 1989, the Graens were delinquent by $4,078.57 on the contract for title and $365.00 on the lot and storage bin leases.

On August 3, 1989, ALS served the Graens with a notice to vacate. On August 31, 1989, ALS commenced an action for forcible entry and detainer under SDCL ch. 21–16 and sought a money judgment. After the Graens answered the complaint, ALS filed an amended complaint. On Sep-

tember 8, 1989, the trial judge sent a letter to notify the parties that a landlord/tenant relationship did not exist and thus the FED action would be dismissed. No order of dismissal was entered but the parties have treated this claim as dismissed.

On September 13, 1989, Home Federal assigned the title of the mobile home to ALS. On September 15, 1989, ALS served and filed a second amended complaint (third complaint) alleging that ALS held a security interest in the mobile home and that the Graens were in breach of the contract for title and the lot and storage bin leases. The Graens answered this complaint and alleged that the mobile home was their homestead and that the contract for title was unlawful because title was not given to the Graens within 15 days of the transfer of possession. A trial was held, with some stipulated facts, on October 10, 1989. On October 26, 1989, Judge Robert C. Heege entered a judgment in favor of ALS in the amount of $4,443.57 for the arrearages on the contract, and lot and storage bin leases. The judgment also gave the Graens ten days to pay the arrearages before their interest in the mobile home would terminate. The Graens did not pay the arrearage within ten days, but did restore possession of the mobile home, lot and storage bin to ALS. At the Graen's request, the trial judge vacated the money judgment. The Graens filed a timely appeal. ALS filed a notice of review with the circuit court. We affirm the trial court.

## DECISION

1. WHETHER, IN A CONTRACT FOR TITLE SITUATION, THE SELLER'S FAILURE TO DELIVER TITLE OF A MOBILE HOME WITHIN 15 DAYS OF TRANSFER OF POSSESSION PROHIBITS THE SELLER FROM ENFORCING THE CONTRACT.

The Graens rely on SDCL 32–7A–17 which provides:

> Any transfer or reassignment of a mobile home or manufactured home title shall be accompanied by an affidavit issued by the county treasurer of the county in which the mobile home or manufac-

tured home is registered, stating that the current year's taxes are paid. No title may be transferred until the taxes under § 10–9–3 are paid. No transfer of title may be completed unless the mobile home or manufactured home is registered as provided in § 10–9–3. *In any event the title or manufacturer's statement of origin shall be transferred within fifteen days of delivery of the manufactured home or mobile home. A violation of this section is a Class 2 misdemeanor.* (emphasis added).

Relying on *Hento v. Melmer*, 73 S.D. 455, 44 N.W.2d 212 (1950), Graens argue that ALS's failure to deliver title within 15 days renders the contract for title unenforceable. In *Hento*, this Court interpreted a vitally different statutory provision dealing with motor vehicle titles. The statute in *Hento* made it a misdemeanor to fail to deliver title within 24 hours of the delivery of the resold used motor vehicle. However, the statute also *specifically declared* that:

> No action or right of action to recover upon any such motor vehicle, or any part of the sale price thereof, shall be maintained in the courts of this state by any such dealer or vendor, [who failed to deliver the title within 24 hours.]

This Court noted that the purpose of that provision was to "discourage and prevent, so far as possible, the sale of stolen motor vehicles, and voids a sale made without compliance with its provisions, ..."

The statute relied upon by the Graens, SDCL 32–7A–17, contains no such specific voiding of mobile home sales for failure to deliver title within 15 days. The statute simply makes the failure a class 2 misdemeanor. Moreover, SDCL 32–7A–17 seems to be designed to ensure the payment of all taxes and registration of all mobile homes in a timely and efficient manner after the delivery of a mobile home.

■ Without the specific language of the statute in *Hento*, it appears that the only statutory effect of SDCL 32–7A–17 is to make it a class two misdemeanor to fail to deliver title within 15 days. Thus, the con-

tract for title was fully enforceable, despite the failure to deliver title and the trial court is affirmed.

2. WHETHER DEFENDANTS' PURPORTED HOMESTEAD INTEREST IN A MOBILE HOME PREVENTS THE SELLER OF THAT MOBILE HOME FROM RECOVERING ON THE DEBT CONTRACTED FOR THE PURCHASE PRICE OF THAT MOBILE HOME.

■ The Graens claim that they have a homestead exemption on the mobile home. SDCL 43–31–1 and 2 clearly contemplate the possibility of the creation of a homestead exemption in a mobile home.* However, the scope and nature of the homestead exemption is not as broad as that contemplated by the Graens. SDCL 43–31–28 provides: "The homestead may be sold for any debt created for the purchase thereof; ..." Similarly, this Court has held that an owner and spouse can create a valid encumbrance upon homestead property. *Sidle v. Cheney*, 74 S.D. 540, 56 N.W.2d 86 (1952) More importantly, this court has held that *the legislature did not intend "to render a homestead immune from forced sale in satisfaction of a debt ... 'contracted for the purchase price.'"* *Hickman v. Long*, 34 S.D. 639, 150 N.W. 298, 299 (1914) (emphasis added). *See also Home Lumber Co. v. Heckel*, 67 S.D. 429, 293 N.W. 549 (1940). A contrary holding would bar creditors from ever being able to enforce contracts, mortgages or other security agreements involving homesteads. Under such law, lenders would be extremely hesitant to lend money for the purchase of property which could be considered a homestead.

Moreover, cases from our sister states are similar and consistent. *Utley v. Boone*, 230 Iowa 979, 299 N.W. 437 (1941) (one holding realty under a contract to purchase is entitled to a homestead exemption except as to liability under the contract for the

unpaid purchase money); *Walker v. Woods*, 308 Mich. 24, 13 N.W.2d 193 (1944) (except as against the right of the vendor, one in possession of land under a contract to purchase may assert a homestead right); *Adams v. Evans*, 343 Mich. 94, 72 N.W.2d 131 (1955); *Corn Belt Products Company v. Mullins*, 172 Neb. 561, 110 N.W.2d 845 (1961) (homestead right does not attach to interest acquired by contract to purchase real property).

ALS was in full recourse position to Home Federal for the Smith's security agreement. ALS extended credit to the Graens to enable them to purchase the mobile home. To protect its position as a creditor, ALS required the Graens to enter into a contract for title. The contract for title provided that, "[i]n the event that the monthly payment is not made, as called for in this agreement, Silver Glen may reclaim the property within 30 days of the due date and any money paid in shall be forfeited." Before the 24 months expired the Graens defaulted and ALS was forced to sue to enforce its rights under the contract for title.

By virtue of the authority cited above, even if the Graens may claim a homestead exemption on the mobile home, that homestead exemption would not bar a suit by ALS, the creditor that extended the credit for the purchase of the mobile home. The trial court enforced the contract for title and, in equity, gave the Graens an additional 10 days to pay the arrearages. The trial court is affirmed.

3. WHETHER ALS WAS ENTITLED TO MONETARY DAMAGES AS A RESULT OF THE BREACH OF THE CONTRACT FOR TITLE, AND THE LOT AND STORAGE BIN LEASE.

■ ALS filed a notice of review with the circuit court. SDCL 15–26A–22 specifically provides that:

> The statute then goes on to prescribe size and quality requirements for mobile homes which may be considered homesteads.

---

* SDCL 43–31–2 reads in part:

> The homestead must embrace the house used as a home by the owner thereof, being either, real property or a mobile home as hereinafter defined, ...

[a]n appellee may obtain review of a judgment or order entered in the same action which may adversely affect him by filing a notice of review with the clerk of the Supreme Court within twenty days after the service of the notice of appeal.

ALS did not comply with SDCL 15–26A–22 because the notice of review was never filed with the clerk of the Supreme Court. This Court has consistently held that failure to comply with the notice of review requirements results in a waiver. *Gratzfeld v. Bomgaars Supply,* 391 N.W.2d 200 (S.D.1986); *Rowett v. McFarland,* 394 N.W.2d 298 (S.D.1986); *Application of Northwestern Bell Tel. Co.,* 326 N.W.2d 100 (S.D.1982). Accordingly, we do not consider the arguments regarding monetary damages raised in ALS's improperly filed notice of review.

MILLER, C.J., WUEST, HENDERSON and SABERS, JJ., and MORGAN, Retired Justice, concur.

MORGAN, Retired Justice, participating.

HERTZ, Circuit Judge, Acting as a Supreme Court Justice, not participating.

