[Civ. No. 23207. Second Dist., Div. One. Dec. 16, 1958.]

ATLAS FLOOR COVERING, Respondent, v. CRESCENT HOUSE AND GARDEN, INC. (a Corporation) et al., Appellants.

Edward Mosk and Norman G. Rudman for Appellants.

Hill, Farrer & Burrill, Leon S. Angvire and William McD. Miller for Respondent.

LILLIE, J.—This is an appeal by defendants from a judgment confirming an arbitration award of money damages to plaintiff.

The dispute between the parties arose out of separate written agreements entered into on October 19, 1955, between plaintiff and 13 defendant corporations for the installation of asphalt floor tiling in tract houses to be constructed on land owned by defendants. The remaining defendant, the Tobin Companies (hereinafter referred to as Tobin) was a licensed building contractor and held an exclusive agency agreement with all the other defendants for the management of their properties and the construction of improvements thereon. Approximately four months after the execution of the October 19 agreements, defendant Tobin delivered to plaintiff a purported letter of rescission based upon plaintiff's asserted failure to properly attend to work orders. Plaintiff

then instituted damage actions for anticipatory breach against the 13 defendants represented by Tobin, and against Crescent House and Garden, Inc., and Dayton House and Garden, Inc., for labor and materials, in addition to damages. Plaintiff also sued Tobin for work and labor performed at the latter's request on different tracts owned by other corporations not here involved. A counterclaim was filed by Tobin for the cost of correcting defective materials and workmanship on 11 houses covered by defendants' letter of rescission.

Subsequently, the entire dispute was submitted to arbitration on the following issues: (1) justification for defendants' rescission and (2) absent justification, the amount of plaintiff's damages. As to defendants Crescent House and Garden, Inc., and Dayton House and Garden, Inc., a further "alternative" issue whether defendants were obligated to plaintiff for a certain sum "or any other sum" as.and for labor and materials furnished at the request of the two defendants was submitted.

The hearing was held on July 19 and August 1, 1957. Thereafter, the arbitrators rendered their decision awarding plaintiff money damages against each of 11 defendants for breach of contract, and in the case of Crescent House and Garden, Inc., and Dayton House and Garden, Inc., an award for labor and materials furnished, in addition to damages. With respect to Tobin, an award to plaintiff was offset by the allowance of Tobin's counterclaim for the cost of correcting defective materials and workmanship. A motion was then made by plaintiff in the lower court to confirm the award. Defendants countered with a motion to vacate and set it aside. The award was confirmed in all respects and the motion to vacate in effect denied. It is from the judgment confirming the arbitration award defendants appeal.

Appellants contend that the award should have been vacated because the arbitrators were guilty of misconduct "in refusing to hear evidence, pertinent and material to the controversy" (Code Civ. Proc., § 1288, subd. (c)). Thus, it is claimed that the arbitrators refused to hear (1) proffered evidence with respect to respondent's assertedly defective work on other tracts owned by companies not parties to these proceedings, it being claimed that such evidence was material on the question of appellants' justification for terminating their contract; (2) proffered testimony of an appellants' witness regarding asserted defects on 11 houses upon which respondent

had performed some work, this likewise bearing on the question of justification; (3) testimony of an expert witness on the issue of damages, specifically with respect to the profit made by said witness on similar though not identical houses; and (4) further cross-examination of a respondent's witness regarding work orders for repair work on tracts owned by companies not parties to this controversy, this also being assertedly material to the issue of damages; and refused to issue a subpoena duces tecum at appellants' oral request for all of respondent's business records in order that damages might thus be minimized, it being further claimed that the arbitrators thereby "exceeded their powers" (§ 1288, subd. (d)). On oral argument, it was additionally contended by appellants that the arbitrators exceeded their powers, contrary to subdivision (d), *supra*, as well as the terms of submission, by awarding to plaintiff in the case of Crescent House and Garden, Inc., and Dayton House and Garden, Inc., both damages for breach of contract and reimbursement for labor and materials furnished.

At the outset, we point out that the record of the arbitration proceedings presented to the trial court, and to this court on appeal, is incomplete, no reporter's transcript of the first of the two-day hearing having been filed. Too, the partial transcript relied upon by appellants, although certified to by the reporter, does not reflect any certification of the arbitrators. While respondent has asked that the appeal be dismissed for these deficiencies, we shall dispose of the matter on its merits.

█ In connection with the review of arbitration awards, "it is well settled that both before the superior and appellate courts every intendment of validity must be given the award and that the burden is upon the one claiming error to support his contention." (*Crofoot* v. *Blair Holdings Corp.*, 119 Cal. App.2d 156, 185 [260 P.2d 156]). █ Where, as here, the submission to arbitration was an unlimited one to be expressly conducted under the rules of the American Arbitration Association and in the absence of some limiting clause requiring that they act in conformity with rules of law, arbitrators may "base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action." (*Sapp* v. *Barenfeld*, 34 Cal.2d 515, 523 [212 P.2d 233].)

■ Appellants' first contention of asserted misconduct relates to the arbitrators' refusal to admit evidence of respondent's failure to repair defective and defectively installed floor tiling in homes constructed by associated companies not parties to these proceedings. Appellants' theory is that Tobin, as agent for such companies, had knowledge of respondent's defective work on those units and that the proffered evidence went directly to appellants' defense of justification for their termination of the contract. This claim is without merit. It appears from the partial record of the proceedings that direct evidence *was* received from Tobin's principal witness, H. D. Tobin, bearing upon the reasons for appellants' letter of rescission, including the asserted defects on work orders relating to other companies. Any additional proffered testimony would have been cumulative. Had this been a judicial proceeding the rejection of such testimony would have been within the court's inherent discretionary power. (18 Cal.Jur. 2d 563.) Also, appellants' theory of admissibility, for which no California authority is cited, overlooks the fact that in arbitration proceedings an award may be predicated on "broad principles of justice and equity" (*Sapp* v. *Barenfeld, supra,* 523), and even they in their brief concede that "arbitrators have fairly wide-sweeping powers of determining the materiality of evidence." Finally, and particularly in view of the partial record at hand, it must be assumed that the arbitrators were experienced men, capable of weighing the evidence and giving consideration to opposing inferences. (*Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.,* 29 Cal.2d 228, 241 [174 P.2d 441].) One such inference opposed to appellants' contention is the settled principle relaxing the rule requiring strict performance in the case of building contracts; thus, whether defects and omissions are substantial or unimportant is generally a question of fact (*Martin* v. *Karsh,* 142 Cal.App.2d 468, 470 [298 P.2d 635]) and, of course, the merits of this controversy are not subject to judicial review. (*Crofoot* v. *Blair Holdings Corp.,* 119 Cal.App.2d 156, 184, 185 [260 P.2d 156].)

■ Next, appellants complain of the refusal of the arbitrators to hear the testimony of their witness, one Reese, respecting defects in 11 houses upon which respondent performed some work. Here again, evidence of the fact in question was elicited from their witness, H. D. Tobin, and the additional testimony here sought to be received would have

been cumulative. Also, from the partial record before us, it appears that Reese was unable to state that his inspection of the 11 houses occurred on any specific occasion prior to appellants' termination of the contract, and therefore the arbitrators properly excluded such proffered testimony because the rights of rescinding parties are controlled by the conditions which existed when the rescission was made, and are fixed and determined by the rescission. (*Spicer* v. *Hurley*, 161 Cal. 1, 7 [118 P. 249].)

■ Appellants' third point relates to the question of damages and the arbitrators' refusal to receive the testimony of their witness, one Diller, which was assertedly material on the question of mitigation. Specifically, appellants offered to prove through Diller, who was likewise in the floor covering business, that respondent's expected profits, had the contract been fully performed, would have been two-fifths of the amount claimed as reflected by the testimony of respondent's president. The proffered proof was based on the profits realized by Diller on similar, but not identical, houses, said houses being different in design and consequently having different floor plans. No abuse of discretion appears; as the chairman of the panel well observed: ". . . the fact that one company makes one profit is, in my opinion, not a proof of what the other company might have made."

■ Also, on the question of mitigation of damages, appellants claim misconduct on the arbitrators' part in refusing to permit extended cross-examination of respondent's president Goland. This field of interrogation would have related to respondent's cost of making accommodation pickup work, or repairs, and appellants' counsel sought to refer to 175 work orders for pickup repairs on tracts owned by associated companies not parties to these proceedings. It was preliminarily established upon such cross-examination that the cost of such work in each of two instances amounted to approximately $1.20; however, when appellants' counsel indicated that he proposed to cross-examine him as to each of said 175 work orders, the arbitrators precluded any further cross-examination. Here again, the evidence was merely cumulative and its admissibility came within the discretionary powers of the arbitrators; furthermore, "proceedings in arbitration are of a summary character and are not subject to dilatory tactics" (*Glesby* v. *Balfour, Guthrie & Co., Ltd.*, 63 Cal.App. 2d 414, 417 [147 P.2d 60]).

Appellants next complain of the arbitrators' refusal to issue a subpoena duces tecum for respondent's income tax statements, invoices, statements for materials and supplies, delivery tickets, time sheets, and other statements bearing upon respondent's operation of its business. The request of the panel was orally made by appellants' counsel near the conclusion of the hearing and called for the production of documents which assertedly would tend to impeach the testimony of respondent's principal witness and further minimize or mitigate the amount of damages. While appellants in their brief concede that certain of the documents may have been privileged, they claim that others were material to the issues before the arbitrators. The request may not have been an afterthought, but it does not appear why application for the documents was not made by affidavit in the usual course and form; in that event, it would not have been open to respondent's criticism of being too broad in character (*Embassy Realty* v. *Southwest Products Co.*, 126 Cal.App.2d 725, 732 [272 P.2d 899]) and lacking in a sufficiently clear showing as to its materiality. Too, in their submission to arbitration, appellants bound themselves by the rules of the American Arbitration Association, one of which provides that the arbitrator "shall be the judge of the relevancy and materiality of the evidence offered. . . ." No reversible error appears in the ruling complained of.

Finally, on oral argument it was urged for the first time that the arbitrators acted in excess of their powers by awarding respondent certain sums for materials furnished appellants Crescent House and Garden, Inc., and Dayton House and Garden, Inc., in addition to assessing damages against them. In the case of these two appellants, the submission to arbitration provided for a determination of appellants' justification for rescission and, if no such justification existed, the amount of respondent's damages. "As an alternative" to a finding on the questions of justification and damages, the arbitrators were called upon to decide whether respondent was entitled to recover from both appellants a stated sum "or any other sum" on account of materials furnished and work performed. The first sentence of the arbitration agreement provided for submission of "the following controversies and any and all controversies or questions between the parties which exist," after which there were listed the specific questions involving respondent and each of the

appellants. While it is true that the determination of an unsubmitted issue requires a vacation of the award as being in excess of the arbitrators' powers (*Bierlein* v. *Johnson*, 73 Cal.App.2d 728, 733-735 [166 P.2d 644]), it does not follow that the disregard by the arbitrators of the "alternative" proviso in the specific question in the instant case constituted a decision of an issue not submitted. The "primary measure of damages" available to a party to a contract who, without fault, is willing to perform but is prevented from doing so by the other party, "is the amount of his loss, which may consist of his reasonable outlay or expenditure toward performance, and the anticipated profits which he would have derived from performance." (*Buxbom* v. *Smith*, 23 Cal.2d 535, 541 [145 P.2d 305].) Inherent in the award at bar is a finding of freedom from fault on respondent's part; hence, there being no justification for the rescission, respondent was entitled to both damages and reimbursement (*Buxbom* v. *Smith, supra*). Furthermore, the arbitrators here did not create and decide a new cause of action, as was unsuccessfully argued in *Crofoot* v. *Blair Holdings Corp.*, 119 Cal.App.2d 156, 187 [260 P.2d 156]), since separate and distinct items of damage arose from appellants' unjustified rescission. Lastly, in view of the fact that "any and all other controversies or questions" were submitted to arbitration, it seems to us that the instant contention "is a strained and unnatural one and violates the obvious spirit of the contract." (*Crofoot* v. *Blair Holdings Corp., supra*, 186.)

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied January 7, 1959, and appellants' petition for a hearing by the Supreme Court was denied February 11, 1959.