**L.R. FOY CONSTRUCTION COMPANY, INC., Claimant and Appellant,**

v.

**SPEARFISH SCHOOL DISTRICT #40–2, Respondent and Appellee.**

No. 14130.

Supreme Court of South Dakota.

Argued Oct. 25, 1983.

Decided Dec. 14, 1983.

---

Jon Mattson of Driscoll, Mattson, Rachetto & Christensen, Deadwood, for claimant and appellant.

Gary R. Richards of Richards, Hood & Brady, Thomas E. Brady of Richards, Hood & Brady, on brief, Spearfish, for respondent and appellee.

DUNN, Justice.

This is an appeal from a judgment of the circuit court affirming the decision of an arbitrator and denying a motion to vacate the arbitration award. We affirm.

On February 23, 1978, appellant L.R. Foy Construction Company, Inc. (Foy) entered into a contract with appellee Spearfish School District # 40–2 (School District) for the construction of a new high school building. The contract provided for a fixed sum to be paid to Foy for the work. During the spring and summer of 1978, the South Dakota Cement Plant, which supplied cement to Foy for the project, experienced a cement shortage. This shortage caused time delays and additional costs on the part of Foy. Foy notified School District of these problems but continued to work on the project.

On August 23, 1978, Foy made a claim to School District for extension of time and the additional costs, but School District, meeting on September 14, 1978, denied the request for extra costs. Thereafter, Foy submitted a demand for arbitration, claiming School District owed it additional costs of $316,326.01. A hearing was held on September 10, 1981, before arbitrator Floyd Matthew, following the American Arbitration Association Construction Industry Arbitration Rules.

After presentation of testimony, exhibits, and briefs, the arbitrator denied Foy's claim for the additional costs. The reasons given for the denial were: 1) the contract did not provide for payment of additional costs caused by delays, shortages, etc.; and 2) Foy could not adequately show that School District agreed to waive the contract provisions and pay the additional costs. This result was within the guidelines of the Arbitration Rules. The circuit court affirmed the arbitrator's decision.

Foy raises three issues on appeal: 1) Did the arbitrator violate SDCL 21–25A–24(4) when he did not allow certain testimony by Foy's project manager? 2) Should Foy recover the additional costs from the School District on the theory of estoppel? 3) Were the trial court's findings clearly erroneous and against the clear preponderance of the evidence?

Foy's initial claim is that the arbitrator's decision should be vacated on the basis of SDCL 21–25A–24(4), which states:

> Upon application of a party, the court shall vacate an award where:
>
> . . . .
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of §§ 21–25A–11 to 21–25A–17, inclusive, as to prejudice substantially the rights of a party . . . .

Foy maintains that this provision was violated because the arbitrator never allowed testimony from Charles Arterburn, Foy's project manager on the Spearfish high school job. Arterburn's testimony would have been to the effect that School District, at various times, indicated to Arterburn that they would compensate Foy for the additional costs of the project. Foy claims that it did not have Arterburn available to testify because it never anticipated that an issue as to contract documents and the intent of the parties would surface at the hearing. We disagree with Foy's claim.

Courts which have examined the issue of exclusion of evidence at arbitration

hearings have stated that the primary concern of the courts should be whether the parties received a full and fair hearing. While a complete omission of critical evidence by the arbitrator would justify vacating the result, the award should not be overturned if the evidence in question was heard in one form or another. *Allstate Insurance Company v. Fioravanti*, 451 Pa. 108, 299 A.2d 585 (1973). There is no need for the arbitrator to hear evidence that would merely be cumulative. *Atlas Floor Covering v. Crescent House & Garden, Inc.*, 166 Cal.App.2d 211, 333 P.2d 194 (1958); *Zinger v. Rolling Hills Realty Corp.*, 224 N.Y.S.2d 40 (1961). As long as the evidence is heard in some form by the arbitrator, the parties have received a full and fair hearing. *Allstate Insurance Co., supra.*

The facts show that even though Arterburn did not testify at the hearing, the content of his testimony was heard and considered by the arbitrator. The following testimony was given by Lyle R. Foy, president of Foy:

Q. Did he [Arterburn] indicate to you that the School Board said they didn't want the job shut down, that they wanted you to proceed with the work?

A. Yes, that's right, and he said, he told us that they were wanting to continue immediately, that they were going to pay the difference in cost.

Later in the hearing the arbitrator said that a statement from Arterburn was unnecessary because "I understand what he understood he was relating to you apparently that he thought you were going to be reimbursed for the extra costs." Foy even admits in its brief that the arbitrator understood and considered the substance of Arterburn's testimony in reaching his decision.

■ Since the evidence which Arterburn would have testified to was heard and considered by the arbitrator, we find no violation of SDCL 21–25A–24(4). The testimony of Arterburn would merely have been cumulative. In addition, the record does

not support Foy's contention that it failed to have Arterburn at the hearing merely because it was "taken by surprise" when new issues surfaced. The only new issue raised at the hearing concerned interpretation of certain provisions of the actual contract document. Arterburn's proposed testimony would not have gone to the contract document, but only to School District's alleged representations to him about payment of additional costs. This issue of payment of additional costs was raised both in Foy's demand for arbitration and at the prehearing conferences. Thus, if Foy deemed Arterburn's testimony to be crucial on this issue, it should have had Arterburn at the hearing. Consequently, the rights of Foy were not substantially prejudiced and the trial court properly upheld the arbitrator's decision.

Foy's next contention is that even though the written contract between the parties did not call for School District to pay any additional costs, the doctrine of estoppel should allow Foy to recover the $316,326.01. Foy maintains that by its actions, inactions, representations and misrepresentations, School District led Foy to believe that it would pay the additional costs. Foy's claim is based upon the alleged comments made by School District to Arterburn about payment of additional costs, School District's rejection of the option to shut down the project, and School District's failure to accept or reject Foy's claim for additional costs until September 14, 1978.

■ To create an estoppel there must have been some act or conduct by the party estopped which has in some manner misled the party in whose favor estoppel is sought and has caused such party to do some act relying upon the conduct of the party to be estopped, thus creating a condition that would make it inequitable to allow the guilty party to claim what would otherwise be his legal rights. *Northwest Realty Company v. Colling*, 82 S.D. 421, 147 N.W.2d 675 (1966); *Weaver v. Bauer*, 76 S.D. 401, 79 N.W.2d 361 (1956).

A careful examination of the record indicates that School District did nothing to mislead Foy or cause reliance by Foy. In fact, the evidence shows that Foy should have been on notice that School District never planned to pay the additional costs. On August 16, 1978, after hearing of the cement shortage, School District met to discuss the problem. School District at that time did not need to decide whether or not to pay additional costs because it received word from the South Dakota Cement Plant that extra loads of cement would be forthcoming, allowing construction to continue at or near one hundred percent of schedule. On September 1, 1978, after receiving Foy's claim for extension of time and additional costs, School District's architect informed Foy that while requests for extensions of time complied with the contract, the request for additional costs could only be "noted" by School District. At the September 11, 1978, board meeting, School District took no action on Foy's claim. Then, on September 14, 1978, School District clearly rejected Foy's claim for additional costs.

Although there was some evidence (the claims of Arterburn) that at its August 14, 1978, meeting School District led Arterburn to believe it would pay Foy for any additional costs, the great weight of the evidence at the arbitration hearing was to the contrary. Four different witnesses testified that School District never told Arterburn it would pay for additional costs: a Spearfish cement contractor, a Spearfish newspaper reporter who covered the school board meeting attended by Arterburn, the superintendent of schools in Spearfish, and the architect and engineer on the project. Thus the arbitrator was justified in finding that School District never led Foy to believe it would pay costs beyond those specified in the contract. In light of this finding and the weight of the evidence, the doctrine of estoppel is inapplicable.

Foy's final contention is that the trial court's findings were clearly erroneous and against the preponderance of the evidence. This claim is without merit and fails for the reasons stated above. Foy's argument that the circuit court's memorandum decision dealt only with a $1,544.00 claim and not the $316,326.01 claim, which is the subject of this appeal, is also without merit. The memorandum decision states that "the application of the contractor for the relief of setting aside the arbitration award is *in all respects* denied and dismissed." (Emphasis added.)

The judgment of the circuit court is affirmed.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

Parties must abide by their contracts.* Rather fundamental.

Pursuant to the contract documents, arbitration was held under the supervision of the American Arbitration Association under American Arbitration Association Construction Industry Arbitration Rules. *See also*, SDCL ch. 21–25A, Enforcement of Arbitration Agreements, which is applicable to this case.

Paragraph 8.3.1 of the general conditions of the contract document provides:

If the Contractor is delayed at any time in the progress of the Work by any act or neglect of the Owner or the Archi-

---

* Exceptions are contracts which are harsh, oppressive, and unconscionable now referred to as contracts of adhesion. This was not briefed nor urged in this case. *See Green v. Clinic Masters, Inc.,* 272 N.W.2d 813, 815–16 (S.D.1978); *Farmers Union Grain Terminal Ass'n v. Nelson,* 223 N.W.2d 494, 497 (N.D.1974); *Bekken v. Equitable Life Assur. Soc.,* 70 N.D. 122, 142–43, 293 N.W. 200, 212 (1940); SDCL 57–A–302 (unconscionable contracts under Uniform Commercial Code); 5A Corbin, *Corbin on Contracts* § 1164 (1964); 79 Harv.L.Rev. 1299 (1965); 53 Colum. L.Rev. 1072 (1953); 43 Colum.L.Rev. 629 (1943). "One-sided agreements whereby one party is left without a remedy for another party's breach are oppressive and should be declared unconscionable." *Durham v. Ciba-Geigy Corp.,* 315 N.W.2d 696, 700 (S.D.1982) (citing *United States Leasing Corp. v. Franklin Plaza Apts.,* 65 Misc.2d 1082, 319 N.Y.S.2d 531 (1971)).

tect, or by any employee of either, or by any separate Contractor employed by the Owner, or by changes ordered in the Work, or by labor disputes, fire, unusual delay in transportation, adverse weather conditions not reasonably anticipatable, unavoidable casualties, *or any causes beyond the Contractor's control,* or by delay authorized by the Owner pending arbitration, or by any other cause which the Architect determines may justify the delay, *then the Contract Time shall be extended* by Change Order for such reasonable time as the Architect may determine. (Emphasis added.)

There is no provision for extra or additional costs. The contract is simply silent on this point. The Spearfish School District extended the time; it did not agree to pay additional costs and this is apparent by the minutes of its meetings. There was no waiver. A parol modification of this written contract would be improper for there is no provision for compensatory damages caused by factors beyond the contractor's control. Therefore, the arbitrator did not misconstrue the contract documents. Furthermore, a most fair and full hearing was accorded the disputants by the arbitrator.

Under Articles 7 (5C–3), 8.3, 12.1, 12.3, 14.1.1 and pages 3 and 4 of the Special Conditions of this construction contract, relief was allowable for an "extension of time" and relief was permitted for a "change in work." There was no change of work.

Under the conditions of the AAA Construction Industry Arbitration Rules, Section 43, an arbitrator "may grant any remedy or relief which is just and equitable and *within the terms of the agreement ....*" (Emphasis supplied.) These parties bargained for arbitration. There existed a freedom of contract between the parties. Neither party had to "adhere" to entering into a contract calling for arbitration. A final award in arbitration must be founded upon the basic tenet that a just, mete, and equitable award must necessarily be within the terms of the agreement. Were it otherwise, arbitrators could subvert the basic premise that parties must abide by their contracts. In this tenet, the arbitrator saw his duty and performed it.

In effect, the trial court sustained the arbitrator. I likewise vote to affirm the trial court. I approve of the legal thesis that a review by the trial court is extremely limited. This thesis is set forth below:

> The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings. *Wilko v. Swan,* 346 U.S. 427, 431–32, 74 S.Ct. 182, 184–85, 98 L.Ed. 168 (1953); *Office of Supply v. New York Navigation Co.,* 469 F.2d 377, 379 (2nd Cir.1972). Accordingly, it is a well-settled proposition that judicial review of an arbitration award should be, and is, very narrowly limited.

*Diapulse Corp. of America v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2nd Cir.1980). In South Dakota, trial courts are limited to vacating arbitration awards as specifically set forth by SDCL 21–25A–24. These grounds for vacation are equivalently cited in *Diapulse,* 626 F.2d at 1110, as set forth in *I/S Stavborg v. Nat'l Metal Converters, Inc.,* 500 F.2d 424, 429–30 n. 11 (2nd Cir. 1974). These cases should serve as a platform of thought for trial courts in this state in the future. Leastways, in my humble opinion.